UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X    <u>For Online Publication Only</u>
DAVID SPENCER,

                       Plaintiff,

             -against-

ARMOR CORRECTIONAL HEALTH INC.,
NURSE ROBERTS, and NURSE MS. JACKSON,

                      Defendant.
---------------------------------------------------------------X

**<u>MEMORANDUM AND ORDER</u>**
18-CV-4638 (JMA) (ARL)

**AZRACK, United States District Judge:**

Currently pending before the Court is a motion to dismiss filed by Defendants Armor Correctional Health Inc. ("Armor"), "Nurse Roberts," and "Nurse Ms. Jackson." For the reasons stated below, the Court grants Defendants' motion.

## I. BACKGROUND

### A. **<u>Factual Background</u>**

The following factual allegations are taken from Plaintiff's complaints in this suit and a related action filed in 2016, along with the documents that Plaintiff attached to those complaints.[1]

In April 2016, Plaintiff was incarcerated at the Nassau County Correctional Center ("NCCC") and sought medical treatment because he was urinating excessively. (Compl, ECF No. 1.) He was given blood and urine tests, which came back normal. (2016 Compl. at 4)

In late April or early May 2016, Plaintiff met with Dr. "Muhammed," who prescribed him Oxybutynin for his excessive urination. (Compl.) After Plaintiff took the medication for a couple

---

[1] As discussed <u>infra</u>, on June 17, 2016, Plaintiff filed a Complaint (the "2016 Complaint") stemming from the same surrounding facts and circumstances. (<u>See</u> Case No. 16-CV-03603 (JMA)(SIL), ECF No. 1). The 2016 Complaint—which only named Armor as a defendant—is largely similar to the Plaintiff's current complaint (the "Complaint" or "2018 Complaint") except for the fact that the 2018 Complaint adds two individual defendants—"Nurse Jackson" and "Nurse Roberts" (collectively, the "Nurse Defendants"). .

of days, he was unable to go to the bathroom at all.  (Id.)  His sides and stomach began to hurt.  (Id.)  He notified correctional staff, who, after waiting a day, sent him down to the medical unit as an emergency.  (Id.)  At the time, no doctor was in.  (Id.)  A nurse named "Ms. V" told Plaintiff to stop taking the prescribed medication.  (Id.)  She looked up the side effects and told Plaintiff to drink plenty of water.  (Id.)

The pain in Plaintiff's side continued and got worse and he put in more sick call requests to see doctors.  (Id.)  Plaintiff alleges that he verbally told Nurse "V" and Defendants Nurse Jackson and Nurse Roberts about the pain.  (Id.)  However, "[n]o one would give [him] any pain meds."  (Id.)

Plaintiff was "pissing blood" and could not sleep at night.  (Id.)  Plaintiff submitted numerous sick call sheets—on May 18, May 20, May 23, May 24—in which he complained of pain in his sides and asked to see an outside doctor[2].  (Compl. Exs.)  Plaintiff's family also called the jail.  (Compl.)

In his May 18, 2016 sick call request, Plaintiff states he had been to the medical unit "over 10 times for this same problem" and that he needed to see an "outside doctor, specialist."  (Compl. Exs.)  In a May 19, 2016 grievance letter, Plaintiff states that he had "seen all of the doctors here" and needed to see an outside doctor.  (Id.)  Similarly, in his 2016 Complaint, Plaintiff alleged that he had "seen almost every doctor" in the facility.  (2016 Compl.)

At some point in May, Plaintiff was given another blood test and another urine test.  (2016 Compl. at ECF p. 6 (handwritten page); Compl.)  On May 25 or May 26, a doctor notified Plaintiff

_____

[2]  Also attached to Plaintiff's complaint is a sick call request dated May 3, 2016.  However, this sick call request indicates that it was received on June 3, 2016.  Even assuming that this sick call request was sent on May 3, 2016, the Court's resolution of the instant motion to dismiss would be the same.

that the urine sample showed that Plaintiff had kidney stones.  (2016 Compl. at ECF p. 6; Compl.)

On June 3, 2016, Dr. Muhammed saw Plaintiff and went over his medical chart.  (Compl.)

Plaintiff proceeded to suffer from kidney stones until September 2017 when his blood and urine finally showed no more stones.  (Compl.; <u>id.</u> Exs.)  Plaintiff alleges that he could have suffered serious damage to his organs and asserts that this cannot be determined until he sees a specialist.  (Compl.)

In addition to facts outlined above, Plaintiff generally alleges that Armor, the Armor medical staff, Dr. Muhammed, and three nurses all knew he was in pain and did "nothing at all." (<u>Id.</u>)

**B.  <u>Procedural History</u>**

On June 17, 2016, plaintiff filed his 2016 Complaint, which concerned the underlying same facts and circumstances.  (<u>See</u> Case No. 16-CV-03603 (JMA)(SIL), ECF No. 1).  Armor, which was the only defendant named in the 2016 Complaint, moved to dismiss, arguing that: (1) that Plaintiff had failed to exhaust his administrative remedies; (2) Armor could not be held liable under <u>Monell v. Dep't of Soc. Servs. of City of New York</u>, 436 U.S. 658 (1978), because Plaintiff failed to plausibly allege the existence of an underlying custom or policy that deprived Plaintiff of his constitutional rights.; and (3) Plaintiff had failed to plausibly allege a deliberate indifference claim. On June 25, 2018, the Court dismissed the 2016 Complaint without prejudice, finding that Plaintiff failed to exhaust his administrative remedies.  (<u>See</u> <u>id.</u>, Docket Entry No. 32.)

On August 18, 2018, plaintiff filed the 2018 Complaint in instant action.  The 2018 Complaint adds "Nurse Jackson" and "Nurse Roberts" as defendants.

Currently pending before the Court is Defendants' motion to dismiss.  Plaintiff did not file any opposition to the motion.[3]  After the Court provided Plaintiff multiple opportunities to respond to the motion to dismiss, on May 6, 2021, the Court issued an order directing Plaintiff to either: (1) file an opposition to Defendants' motion to dismiss, or (2) indicate by letter to the Court that Plaintiff does not wish to file an opposition but still intends to prosecute this lawsuit.  Plaintiff responded in a letter dated May 10, 2021, which stated that he did not wish to file an opposition but that he intended to prosecute this lawsuit.[4]  Defendants then filed their motion to dismiss with the Court.

## II.  DISCUSSION

### A.  Legal Standards

#### 1.  Standard for Motion to Dismiss under Rule 12(b)(6)

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  A "pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do.'"  Twombly, 550 U.S. at 555.  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of further factual enhancement.'"  Iqbal, 556 U.S.

---

[3] Prior to filing their motion to dismiss, Defendants filed a pre-motion conference letter with the Court seeking leave to file the motion to dismiss.  Plaintiff filed an unsworn response to Defendants' pre-motion letter, which includes a handful of additional factual allegations.  (ECF No. 24.)  Plaintiff's letter alleges that "Plaintiff was not informed by any Armor staff of the side effects until after the medication had did its damages" and that "[t]he Doctors after many sick call and months and months" passed "order[ed] a sonogram of plaintiff prostate and found it to be inflamed and swollen due to medication given by Armor."  (Id.)  In addressing the motion to dismiss, the Court has considered the arguments and the additional factual allegations set out in this letter.

[4] Plaintiff was released from custody in October 2019.  (See ECF Nos. 29, 40.)

at 678 (quoting Twombly, 550 U.S. at 555). A complaint must allege a plausible set of facts sufficient "to raise a right to relief above the speculative test." Twombly, 550 U.S. at 555.

District courts are "obligated to construe pro se complaint[s] liberally," Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009), interpreting them "to raise the strongest arguments that they suggest," Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006). However, even liberally construed, a pro se complaint must still state a plausible claim for relief. See Harris, 572 F.3d at 73.

## 2. Deliberate Indifference Claims Concerning Inadequate Medical Care

In the prison context, an Eighth Amendment claim arising out of inadequate medical care requires a plaintiff to demonstrate a defendant's "deliberate indifference to [his] serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104 (1976). The deliberate indifference standard includes both objective and subjective components. Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011). "The objective component requires that 'the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists.'" Id. (quoting Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996) (internal quotation marks omitted)). The subjective component requires that the "official must 'know[ ] of and disregard[ ] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Id. (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)).

The subjective component requires that "the charged official . . . act with a sufficiently culpable state of mind." Salahuddin v. Goord, 467 F.3d 263, 280 (2d Cir. 2006). "Deliberate indifference is a mental state equivalent to [criminal] recklessness," which means that "the charged

official [must] act or fail to act while actually aware of a substantial risk that serious inmate harm will result." Id.

"Medical malpractice does not rise to the level of a constitutional violation unless the malpractice involves culpable recklessness—'an act or a failure to act by [a] prison doctor that evinces a conscious disregard of a substantial risk of serious harm.'" Hill, 657 F.3d at 122 (quoting Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998) (internal quotation marks omitted). A "mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." "[5] Id. (quoting Chance, 143 F.3d at 703).

Finally, in order to state a viable § 1983 action against an individual defendant, a plaintiff must allege a defendant's direct or personal involvement in the alleged constitutional deprivation. Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).

**B.** **Analysis**

### 1. The Nurse Defendants

Plaintiff's complaint contains minimal allegations about Defendants Nurse Jackson and Nurse Roberts (the "Nurse Defendants"). Specifically, Plaintiff alleges that: (1) he verbally told Nurse "V" and Defendants Nurse Jackson and Nurse Roberts about his pain; and (2) "[n]o one would give [him] any pain meds." Plaintiff's 2018 Complaint does not identify when he spoke to

---

[5] The Court has assumed that Plaintiff's claims are properly analyzed as Eighth Amendment deliberate indifference claims. If Plaintiff was a pretrial detainee at the time of the events in question, his deliberate indifference claim would be analyzed under the Fourteenth Amendment. In contrast to deliberate indifference claims under the Eighth Amendment, the second prong of the deliberate indifference standard for pretrial detainees requires that the plaintiff prove "that the defendant-official acted intentionally . . . or recklessly failed to act with reasonable care to mitigate the risk that the . . . defendant-official knew, or should have known, [to exist]." Darnell v. Pineiro, 849 F.3d 17, 35 (2d Cir. 2017) (explaining that "'subjective prong' (or 'mens rea prong') of a deliberate indifference claim [for a pretrial detainee] is defined objectively"). Even if Plaintiff's claims are analyzed under the deliberate indifference standard appliable to pretrial detainees, the Court would still grant the motion to dismiss.

the two individual defendants.  Nurse Roberts signed Plaintiff's sick call requests dated May 18, May 23, and May 24, which suggests that Nurse Roberts saw Plaintiff on those dates.

Plaintiff also generally and collectively alleges that Armor, the Armor medical staff, Doctor Muhammed and the three nurses did "nothing at all."  (Compl.)

As an initial matter, Plaintiff's general and conclusory allegation that all Armor personnel, including the Nurse Defendants, "did nothing at all" is contradicted by the specific allegations in Plaintiff's complaints and the documents attached thereto which show that: (1) he was given blood and urine tests before being prescribed Oxybutynin; (2) after he complained, his Oxybutynin medication was stopped; (3) he was seen by multiple doctors in May; (4) he was given an x-ray; (5) he was given a second round of blood and urine tests that led to his kidney stone diagnosis; and (6) after this diagnosis Plaintiff saw Dr. Muhammed again on June 3, 2016.  It is also notable that, within a week of seeing Nurse Roberts on May 18, Plaintiff was diagnosed with kidney stones as a result of his urine test.

As for Plaintiff's allegation that the two Nurse Defendants failed to prescribe him any pain medication, that allegation is insufficient to plausibly allege that these two individual defendants acted with deliberate indifference.  First, there are no allegations in the complaint that plausibly suggest that these two nurses even had the authority to prescribe pain medication.  See Meeks v. Wijas, No. 20-C-1734, 2021 WL 148788, at *2 (E.D. Wis. Jan. 15, 2021) (dismissing deliberate indifference claim against nurses who failed to "prescribe[] pain medication" because "nothing in [plaintiff's] complaint suggests Defendants, all of whom were nurses, had the authority to prescribe pain medication"); Sang v. Baker, No. 1:06-CV-01496, 2010 WL 3238919, at *4–5 (E.D. Cal. Aug. 12, 2010) (report and recommendation), adopted by, No. 1:06-CV-01496, 2010 WL 4137189 (E.D. Cal. Oct. 18, 2010) (dismissing complaint against nurse defendant where no facts

were alleged indicating that the defendant, "a Registered Nurse, had the authority to prescribe pain medication or override a physician's decision not to prescribe medication").  Second, during the time period in question, Plaintiff was seen by multiple doctors who did not prescribe him pain medication.  Thus, even if the Nurse Defendants did have authority to prescribe pain medication, Plaintiff has not plausibly alleged that these nurses acted with deliberate indifference when they acted in accordance with the determinations about pain prescriptions made by multiple doctors who saw Plaintiff.  See Sang, 2010 WL 3238919, at *4–5.; Rackemann v. Galipeau, No. 20-CV-214, 2020 WL 6263036, at *3–4 (N.D. Ind. Oct. 23, 2020) (dismissing claims against:  (1) one nurse defendant for failing to provide pain medication because doctor "had not authorized prescription pain medication" for kidney stones and, thus, "she was not acting outside the scope of professional judgment to have refused to dispense a non-prescribed medication"; and (2) other nurse defendants who refused to give plaintiff pain medications and instead followed a doctor's "orders" concerning plaintiff's medication and doctor's direction that plaintiff should drink more water to pass his kidney stones).  Under all the circumstances, Plaintiff has not plausibly alleged that these two nurses acted with deliberate indifference based on their failure to prescribe him pain medication or any of their other alleged conduct.  See also Williams v. Cty. of Orange, No. 17-CV-8225, 2019 WL 1244509, at *1 (S.D.N.Y. Mar. 15, 2019) (dismissing deliberate indifference claim where plaintiff, who was diagnosed with kidney stones and received some treatment, alleged that he was "routinely denied pain medication" and defendants failed to follow one doctor's recommendation that plaintiff see a specialist).

Finally, the Court notes that a primary focus of Plaintiffs' complaint is his apparent claim that the Oxybutynin he was prescribed caused his kidney stones and potentially caused serious damage to his organs.  Plaintiff also suggests that he was not informed of the potential side effects

of this medication. The two Nurse Defendants, however, did not prescribe Plaintiff this medication—Dr. "Muhammed" prescribed the Oxybutynin. Thus, Plaintiff has not alleged plausible deliberate indifference claims against the Nurse Defendants in connection with this prescription. Moreover, even Plaintiff's allegations concerning Dr. Muhammed and this prescription suggest, at best, negligence, which is insufficient to establish a deliberate indifference claim.

### 2. Armor

Under Monell, 436 U.S. 658, in order to prevail on a Section 1983 claim against a municipality or a private company, a plaintiff must show: "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality [or private company acting under color of state law] caused the constitutional injury." Roe v. City of Waterbury, 542 F.3d 31, 36 (2d Cir. 2008).

To establish the existence of an actionable policy or custom, the plaintiff must allege (1) the existence of a formal policy officially endorsed by the private company, (2) actions taken or decisions made by an official with final decision making authority, (3) a practice so persistent and widespread that it constitutes a custom, or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to a "deliberate indifference" to the rights of those who come in contact with the private company's employees. Hughes v. Nassau Cty. Sheriff's Dep't, No. 17-CV-04715, 2018 WL 324885, at *3 (E.D.N.Y. Jan. 8, 2018) (citing Davis v. Lynbrook Police Dep't, 224 F. Supp. 2d 463, 478 (E.D.N.Y. 2002)).

The Court assumes that Armor was acting under color of state law. However, the only factual allegation related to a potential Monell claim in the complaint is Plaintiff's allegation that "Armor also has repeated examples of negligent acts which shows a pattern of conduct." This

conclusory allegation in insufficient to allege a plausible <u>Monell</u> claim.  Accordingly, Plaintiff's <u>Monell</u> claim is dismissed.

## C.  <u>Leave to Amend</u>

Generally, when a liberal reading of a <u>pro se</u> complaint "gives any indication that a valid claim might be stated," the district court should not dismiss the complaint without granting leave to amend.  <u>Chavis v. Chappius</u>, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks omitted)).  Courts, in their discretion, may deny leave to amend if the plaintiff has already been given an opportunity to amend or has not filed any opposition to a defendant's motion to dismiss.  <u>See</u> <u>Mulready v. Mulready</u>, No. 306-CV-00934, 2007 WL 1757055, at *1 (D. Conn. June 19, 2007); <u>Whitenack v. Armor Med.</u>, No. 13-CV-2071 SJF ARL, 2014 WL 5502300, at *8 (E.D.N.Y. Oct. 30, 2014) (dismissing amended complaint with prejudice because "plaintiff has not sought leave to amend his amended complaint, and, indeed, has not even opposed defendants' motion to dismiss, and he has already been granted leave to amend the complaint once").

Notably, this is already Plaintiff's second complaint about the underlying facts.  In the 2016 Complaint, Defendants argued exhaustion and failure to state a claim.  Despite being on notice of alleged deficiencies in the 2016 Complaint, the factual allegations in Plaintiff's 2018 Complaint are largely similar to the 2016 Complaint, with the exception of the two newly added individual defendants.  Additionally, in response to Defendant's motion to dismiss the 2018 Complaint, Plaintiff did not file any opposition brief or seek leave to amend.  Given that Plaintiff already had two opportunities to allege plausible claims and has also elected not to file any opposition to the instant motion to dismiss, the Court finds it appropriate, in its discretion, to deny leave to amend.

## III.  CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is granted and the complaint is dismissed with prejudice. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal.  See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).  The Clerk of the Court is directed to close this case and mail a copy of this order to the pro se plaintiff.

**SO ORDERED.**

Dated:  March 31, 2022
        Central Islip, New York


_____/s/  (JMA)_____
JOAN M. AZRACK
UNITED STATES DISTRICT JUDGE